Bay, J.
delivered the opinion of the Court.
I have considered this case, and am of opinion that the prohibition should have been granted. Coroners were very ancient officers at the Common Lawr, and they were so called because they deal principally with the pleas of the crown, and in former days were the principal conservators of the peace within their counties. (4 In. 471.) In England they are chosen by the freeholders of the county, in consequence of the. king’s writ out of chancery; and their powers, when appointed, are either judicial or ministerial. The ludicial power oí a Coroner is first to inquire into v * or concerning the death of a man, when any one is slain, or dies suddenly, by a jury of inquest supervisum corporis, arid this must be done at the place where the death happened. And if any one be found guilty by this inquest of murder, or other homicide, he is to commit him to prison for further trial. They are also to make inquiiy *232 0f the accessories before the fact, or whether they have fled for it or not; and, indeed, of all things which occasioned it. After which, it is his duty to certify the whole of this inquisition under his seal and the seals of the jurors, together with the evidence thereon, to the Court of King’s Bench, or the next assizes. Another branch of his jurisdiction, in his judicial capacity, is to inquire into and concerning shipwrecks, and to certify whether wreck or not, and who is in possession of the goods, &c.; also concerning treasure trove, and who were the finders, and where it is, and whether concealed of not. These appear to be the principal parts of the judicial power or duty of a Coroner, although there are many other duties attached to this judicial branch of his jurisdiction, which are of a subordinate nature, but unnecessary here to be enlarged upon. .Secondly, the ministerial office of a Coroner, is only as the Sheriff’s substitute, or where the Sheriff is a party. If any just exception be taken to a Sheriff for suspicion or partiality, (or that he is interested in the suit, or of kindred to either plaintiff or defendant,) the process must be awarded to the Coroner instead of the Sheriff for the execution thereof. From the above view, it is easy to perceive how important to the criminal justice of the country the office and duty of a Coroner must necessarily be in the due administration of justice. In South Carolina, Coroners *233 are appointed under and by virtue of an act passed so long ago as the year 1706, and this act directs that a Coroner shall be appointed in every county or precinct of the state, whose powers and duties within the respective preeincts, both judicial and ministerial, are very fully detailed in the said act, and are exactly the same as those prescribed, by the Common Law, in manner above set forth. In consequence of this act, then, it is presumed that Mr. Giles, the plaintiff in the suggestion;, was appointed Coroner for Charleston District, with all the powers and authorities appertaining to the nature of his office. If so, then it seems naturally to follow, that no other person has a right to exercise the duties of that office but himself, within, the limits of his jurisdiction, (except in cases at a distance, where he cannot conveniently attend in time, and in which the magistrates have jurisdiction,) unless there be some act or law appointing such other person to perform those duties. The only act, then, under which Mr. Brown, the City Coroner, claims the right of exercising those duties, is the act incorporating the city of Charleston, the fourth clause of which, after defining the powers of the corporation, and declaring over what subjects they shall have jurisdiction, goes on, and enacts that “ they shall and may appoint a Recorder, Treasurer, Clerk, Coroner, Harbour Master, Fire Masters, Constables, and all such *234 other officers, &c. as shall appear to them requisite and necessary for carrying into effectual execwtion all the by-laws, rules, and ordinances, of the said city.” Under this clause of the act, the defendant, James Brown, has been appointed Coroner of the city of Charleston, and claims the privilege of holding and taking inquest's on ttie bodies of deceased • persons. Now let it be asked, is there any thing in this clause of the act which gives either the corporation or its Coroner any authority or jurisdiction over homicide, or any of its incidents or concomitants ? 1- am clearly of opithere is not. I need hardly mention, that-nothing shall be presumed to be within the ju- • -i • .• r»j.T_ j* 1 j. 1 j • nsdietion of tne corporation but what is express-x x ly granted, and that it is the creature of its charter; arid upon looking into the former part of the x cj x clause, it will be found that the corporation has jurisdiction only in certain definite cases, as follows : “ They may make rules and by-laws respecting the harbours, streets, lanes, public buildings, work-houses, markets, wharves, public houses, carriages, wagons, &e., the care of the poor, the regulation of seameh, or disorderly persons, negroes, and in general every other by-law requisite and necessary for the security, welfare, and convenience of the said city,” &c. Then follows the above recited part of the clause for the appointment of the city officers, and among them a Coroner. But certainly among these enumera *235 ted powers given to the coi’poration, nothing is said about homicide, or the casual or accidental death of persons within the limits of the said city. This being the ease, then, it cannot possibly be supposed ox’ intended that any powers or jurisdiction could be given to any of;£he corporate officers, which was never meant or intended tobe given to the corporation itself, under whose authority they act. The powers of the City Coroner must consequently be limited to the cases within the limits of the City Corporation, for the purposes of carrying into execution the by-laws of the Corporation, as was very well observed by the Attorney General, in the course of his argument, and cannot extend to murder, manslaughter, or any other species of homicide which belongs exclusively to the superior Courts of Sessions of the state, and to which the State Coroner is alone answerable for his conduct in such cases. I have therefore no hesitation in saying, that in my opinion all such inquests and proceedings of the City Coroner, in the cases above alluded to, have been illegal, and unwarranted by law; but I would not mean to be understood that he has beexx guilty of intentional abuse of his authority and powers, in taking cognizance of such cases; but only of mistaking his powers and jurisdiction. And that the decision of the Circuit Court, in refusing the prohibition, should be set aside; and that the motion for the prohibi *236 ^on should be granted, on behalf of the State Coroner, to restrain the City Coroner in future from any interference in matters peculiarly be. longing to the State Coroner.
granted in roEer?cannotgw¡ any operation to thatoáce beyond thc effectual exeiy-taS.0Lthfig to be within their jurisdiction which gra“tod.e"prfssIy
Richardson, Attorney General, for the District Coroner.
Gadsden, for the City Coroner.
The other Judges concurred.